IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RACHEL BRODLE,<br><br>Plaintiff,<br><br>v.<br><br>LOCHMEAD FARMS, INC., an Oregon corporation; LOCHMEAD DAIRY, INC., an Oregon corporation; and DARI-MART STORES, INC., an Oregon corporation;<br><br>Defendants. | Civ. No. 10-6386-AA<br><br>OPINION AND ORDER |

AIKEN, Chief Judge:

Plaintiff Rachel Brodle filed suit against Lochmead Farms, Inc. ("Lochmead Farms"), Lochmead Dairy, Inc. ("Lochmead Dairy"), and Dari-Mart Stores, Inc. ("Dari-Mart") seeking injunctive relief, declaratory relief and damages for alleged violations of the Americans with Disabilities Act (ADA). Plaintiff now moves for sanctions based on defendants' spoliation of evidence, and

defendants Lochmead Farms and Lochmead Dairy move for summary judgment on grounds that no basis for liability exists. Plaintiff's motion is DENIED. Defendants' motion is GRANTED.

Background

According to the allegations in her complaint, plaintiff suffers from primary adrenocortical insufficiency (Addison's Disease). Plaintiff alleges that her condition was and is a "disability" under the ADA and Oregon's disability statute. 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.104; Or. Rev. Stat. § 659A.104(1)(a); Or. Admin. R. 839-006-0305(1). Plaintiff was prescribed two dogs to help her manage her alleged disability. Plaintiff claims they are her "service" and "assistance" animals under 28 C.F.R. § 36.104, Or. Rev. Stat. §§ 346.680(1) and 401.977(1)(b).

On December 1, 2009, plaintiff and her dogs entered a Dari-Mart store located on Coburg Road in Eugene. Dari-Mart's store clerk, Tracy Steele, asked plaintiff "what kind of service dogs were they." Pl.'s Ex. 1. (Steele Dep., p. 45). In response, plaintiff became "distressed and started yelling." Dfs.' Ex. B, p. 2 (Steele Dep., p. 7). Plaintiff then left the store but returned later that same day, this time accompanied by her friend Lorri Cochrane. Plaintiff spoke with Steele and asserted her right to enter Dari-Mart with her service dogs. Plaintiff and Cochrane then talked at length with another Dari-Mart employee,

Angela Wunderly, about Wunderly's weight and health. Dfs.' Ex. A, p. 5 (Pl.'s Dep., p. 26). Dari-Mart's store manager, Mary Alexander, reported that plaintiff's comments were "incredibly rude and invasive" and left Ms. Wunderly feeling "embarrassed and humiliated." Dfs.' Ex. C, p. 2 (Alexander Dep., p. 36).

In a notebook used for store communications, Steele reported the December 1, 2009 events to Alexander. Pl.'s Ex. 3. Alexander instructed all of her employees that if plaintiff returned to the store, she should be directed to speak with Alexander before being allowed to shop. Dfs.' Ex. C, pp. 4-5 (Alexander Dep., pp. 52-54). Alexander also contacted Dari-Mart's Human Resources Department and requested that the surveillance video from that day be reviewed.

On December 6, 2009, plaintiff returned to the Dari-Mart Coburg Road store with her dogs.[1] Steele informed her that she would not be allowed to shop until she spoke with the manager. Dfs.' Ex. A, p. 4 (Pl.'s Dep., p. 24). Plaintiff refused to speak with Alexander, and before leaving the store, plaintiff mentioned contacting an attorney. Dfs.' Ex. B, p. 6 (Steele Dep., p. 45).

Later that same day, Cochrane returned to the store, poured

[1] According to defendants, "[t]here has been some disagreement in the record developed thus far as to whether or not plaintiff was accompanied by her dogs on this visit. However, Dari-Mart admitted in ¶ 14 of its Answer that Ms. Brodle did have her dogs with her on December 6." Dfs.' Opp. to Pl.'s Motion for Relief, p. 3.

herself a soda, and expressed her displeasure to Steele at what she perceived to be plaintiff's mistreatment. Cochrane left the store, allegedly without paying for the soda. Dfs.' Ex. B, pp. 4-5 (Steele Dep., pp. 39-41). Cochrane also stated that she and plaintiff "will be talking to an attorney." Pl.'s Ex. 6. Steele noted Cochrane's comment in the in-store communication notebook, and included the comment "possible lawsuit." Dfs.' Ex. B, p. 6 (Steele Dep., p. 45).

On December 7, 2009, Alexander emailed Earline Rust, Dari-Mart's Human Resources Manager, and stated that she believed plaintiff "may be looking to sue us." Pl.'s Ex. 6. Alexander's email noted that plaintiff's alleged "disability is induced by stress and she had to be taken to a doctor after being refused service." Id. Alexander's email then referred to the video surveillance and stated: "reviewing the tape showed clearly that [plaintiff] was rude and disruptive." Id.

Rust spoke with Jeff Carley, the Safety Director, and asked him to review the video surveillance of December 6, 2009, assuming he would preserve it. Dfs.' Ex. E, p. 2 (Rust Dep., p. 40). Instead, Carley only took snapshots of Cochrane taking a soda without paying for it for possible shoplifting prosecution. Approximately 30 days later, the automated surveillance system recorded over the video from December 6, 2009, destroying it. Dfs.' Ex. E, p. 2 (Rust Dep., pp. 37-40). The surveillance video

from December 1, 2009, however, was preserved.

Plaintiff maintains that defendants denied her access to the store on December 6, 2009 because her service dogs were present. Defendants insist that it was plaintiff's conduct on December 1, 2009 that compelled them to deny her access to the store on December 6, 2009.

## DISCUSSION

## I. Plaintiff's Motion for Relief for Spoliation of Evidence

Plaintiff requests relief for spoliation of evidence resulting from defendants' failure to preserve video surveillance from December 6, 2009. Specifically, plaintiff requests: (1) entry of an order designating as an established fact that defendants denied plaintiff access to their store because she was accompanied by her service dogs; and (2) entry of an order precluding defendants, including their current and former employees, from testifying about plaintiff's alleged conduct in their store. Alternatively, plaintiff moves the court to impose an adverse-inference instruction instructing the jury that it may infer that the spoliated video surveillance would have been unfavorable to defendants.

### A. Plaintiff's Request for an Order Designating Facts as Established

Plaintiff argues that the destruction of December 6 surveillance video irretrievably lost evidence of whether defendants forbid plaintiff from shopping while using her service

dogs or whether plaintiff's "rude and disruptive" conduct gave defendants a nondiscriminatory reason to deny her access. Therefore, plaintiff requests that the court designate as an established fact that defendants denied plaintiff access to their store because she was accompanied by service dogs.

Federal district courts have inherent authority to sanction a party for spoliation of evidence. Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006). A court may "look to Fed. R. Civ. P. 37(b)(2)(A) for guidance as to alternative sanctions such as directing 'designated facts to be taken as established for purposes of the action[.]'" Peschel v. City of Missoula, 664 F. Supp. 2d 1137, 1142 (D. Mont. 2009) (quoting Fed. R. Civ. P. 37(b)(2)(A)(i)). This sanction sometimes functions as a default sanction where it "effectively grants summary judgment" on an issue. Peschel, 664 F. Supp. 2d at 1145-46. A default sanction is drastic and requires a court to weigh the following five factors before it is imposed:

> (1) the existence of extraordinary circumstances; (2) the presence of willfulness, bad faith, or fault by the offending party; (3) whether lesser sanctions would be more appropriate; (4) the relationship between sanction, misconduct, and matters in controversy; and (5) prejudice to the non-offending party.[2]

Halaco Eng'g Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988).

[2] Prejudice is an optional consideration in the default sanction analysis, but is often considered by courts. See Halaco, 843 F.2d at 380-82; In re Napster, Inc. Copyright Litig., 462 F. Supp. 1060, 1075-77 (N.D. Cal. 2006).

Under the first factor, a default sanction "is justified in extreme circumstances, in response to abusive litigation practices, and to insure the orderly administration of justice and the integrity of the court's orders." Id. at 380. Under the second factor, the court considers the degree of culpability; the lowest threshold of "fault" sufficient to merit imposition of a default sanction is beyond "mere negligence." See Peschel, 664 F. Supp. 2d at 1146-47 (finding adequate evidence to support a finding of recklessness). Under the third factor, "the court must: (1) consider the feasibility of less drastic sanctions; and (2) provide a reasonable explanation why such alternate sanctions would be inappropriate." Id. at 1147. Under the fourth factor, the court evaluates whether the "misconduct penalized [] relate[s] to matters in controversy in such a way as to interfere with the rightful decision of the case." Halaco, 843 F.2d at 381. Finally, under the fifth factor, the court may consider "the existence and degree of prejudice to the wronged party." Id. at 382. In other words, courts look to whether the spoliation has impaired the non-spoliating party's "ability to go to trial or threatened to interfere with the rightful decision of the case." Leon, 464 F.3d at 959.

Plaintiff argues that even if her proposed evidentiary sanction amounts to a default sanction, she meets the standard because at least four factors weigh in her favor. First,

plaintiff argues, extraordinary circumstances are present because the destruction of the video eliminated critical evidence that is essential to the accuracy of the fact-finding process. Second, plaintiff maintains defendants destroyed the video in bad faith or at least recklessly, as evidenced by the fact that defendants selectively preserved snapshots from that video that a jury could find supportive of their case, and by the fact that Dari-Mart failed to maintain surveillance tape back-ups. Third, plaintiff contends that the relationship between the misconduct and the matters in controversy is present in that the destroyed video is the best evidence of what occurred during the December 6 incident. Fourth, plaintiff claims she is prejudiced because she has no corroborating witnesses of the December 6 encounter.

Defendants respond that plaintiff's request would effectively grant summary judgment in her favor. They argue that there are no extraordinary circumstances since it is still early in the litigation, and the loss of the video has not destroyed the evidentiary balance essential to the accuracy of the fact-finding process. They also argue that willfulness, bad faith, and fault are all lacking, as Dari-Mart's sole error was its failure to select the December 6 video as exempt from Dari-Mart's standard retention protocol, which was merely an innocent mistake well below the requisite culpability level.

Defendants further argue that the parties largely agree

regarding what actions took place on December 6 - that plaintiff was asked to leave, that she was told she would have to speak with the manager before she would be allowed to re-enter the store, and as to plaintiff's comments in response. Therefore, according to defendants, the only matter still in controversy is plaintiff's demeanor on December 1 and the December 6, is unrelated to plaintiff's conduct on December 1. Finally, defendants insist that because the December 6 video is irrelevant to the December 1 incident, plaintiff will suffer no prejudice. Defendants maintain that the parties' disagreement over the events of December 6 may be adequately explored through direct testimony at trial, and therefore, plaintiff's ability to present evidence at trial has not been prejudiced by the loss of the video.

I find that plaintiff's request is tantamount to a request for entry of summary judgment and that plaintiff fails to satisfy the higher standard for default sanctions. The sole fact that Dari-Mart preserved video from December 1 but failed to preserve video from December 6 does not show willfulness, bad faith, or fault. Furthermore, the loss of the December 6 video does not interfere with the rightful decision of the case, because defendants admit plaintiff was asked to leave on December 6 and the December 6 video does not establish what occurred on December 1. Moreover, plaintiff has failed to prove that she is

prejudiced by the loss of the video, as plaintiff is still able to present her case at trial through direct testimony. Therefore, plaintiff's request for entry of an order designating facts as established is denied.

B. Plaintiff's Request for an Order Precluding Defendants' Testimony

Plaintiff also argues that testimony of defendants and their employee regarding the alleged content of the December 6 video should be excluded in order to correct the damage resulting from the spoliation.

A court may exclude the disputed evidence, including any "witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence." Napster, 462 F. Supp. 2d at 1066 (citing Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368-69 (9th Cir. 1992); Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993)). This preclusive sanction requires that, "given the spoliation, the evidence to be excluded would 'unfairly prejudice an opposing party.'" Napster, 462 F. Supp. 2d at 1077 (quoting Unigard, 982 F.2d at 368).

Plaintiff insists that the destroyed video was the best evidence of what occurred on December 6 and was closely related to what occurred on December 1. However, as explained above, plaintiff has failed to show that she is unduly prejudiced by the destruction of the December 6 video and any testimony by

defendants and their employees regarding the events of that day. Therefore, exclusion of such testimony is not warranted and plaintiff's request is denied.

### C. Plaintiff's Request for an Adverse Inference Instruction

Alternatively, plaintiff requests an adverse inference instruction. A court may "permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." Glover, 6 F.3d at 1329 (citing Akiona v. U.S., 938 F.2d 158, 161 (9th Cir. 1991)). A party seeking this sanction must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Napster, 462 F. Supp. 2d at 1078 (quotations and citations omitted).

Again, plaintiff has failed to show that the video was destroyed with a culpable state of mind. An adverse inference instruction is not warranted and plaintiff's request is denied.

Because plaintiff has failed to satisfy the necessary requirements for an imposition of sanctions, plaintiff's motion for relief for spoliation of evidence is denied in its entirety.

## II. Defendants' Motion for Summary Judgment

Defendants Lochmead Farms and Lochmead Dairy move for

summary judgment arguing that plaintiff fails to establish a basis for liability.

Plaintiff's complaint names Dari-Mart, Lochmead Farms and Lochmead Dairy as defendants, alleging that Lochmead Farms and Lochmead Dairy both own Dari-Mart. Lochmead Farms and Lochmead Dairy argue that no basis for liability exists because they are separate corporations and do not own Dari-Mart and do not employ the Dari-Mart employees who allegedly discriminated against plaintiff. Dari-Mart, Lochmead Farms, and Lochmead Dairy are each owned by Pat Straube, among others, and neither Lochmead Farms nor Lochmead Dairy has an ownership interest in Dari-Mart. Affidavit of Pat Straube, pp. 1-2.

In response, plaintiff does not dispute defendants' asserted fact. Instead, plaintiff argues:

> A reasonable jury could find from the evidence that defendants shared such common interests, policies, and practices, including policies and practices related to discrimination, that they effectively operated as a single close corporation in this case. A jury could also find that their interests included the desire to maintain a kind of customer experience … that is incompatible with the right to receive reasonable accommodation for disabilities by being allowed to use service dogs in all areas of the stores where the public is normally permitted to go.

Pl.'s Memo. in Opp. to Dfs.' Motion for Summ. Judg., p. 8. Plaintiff further asserts: "The evidence also supports a conclusion that as Human Resources Director for the three defendant corporations, Rust acted as their agent in actions or

omissions that directed or contributed to discrimination against plaintiff because of her service dogs."[3] Id. Plaintiff endeavors to argue that defendants are one entity in order to extend liability to Lochmead Farms and Lochmead Dairy, presumably under the alter ego theory.

Plaintiff's claim that defendants are one entity is an attempt to pierce the corporate veil. Piercing the corporate veil means that the corporate entity is disregarded and the "shareholders who control and dominate [the] corporation may be held personally liable if the corporation is a mere 'instrumentality' or 'alter ego' and where fraud or injustice has resulted." Amfac Foods, Inc. v. Int'l Sys. & Controls Corp., 294 Or. 94, 105, 654 P.2d 1092 (1982). "This rule is applicable whether the stock is owned by one person or by many, or by another corporation." Epton v. Moskee Inv. Co. et al, 180 Or. 86, 93, 174 P.2d 418 (1946). "A [party] seeking to pierce the corporate veil must prove that another entity actually controlled (or was under common control with) the corporation, that the other entity used its control over the corporation to engage in improper conduct, and that, as a result of the improper conduct, the plaintiff was harmed." State ex rel. Neidig v. Superior Nat. Ins. Co., 343 Or. 434, 454-55, 173 P.3d 123 (2007) (citing Amfac, 294 Or. at 108). The fraud or injustice/improper

[3] Rust is also the Human Resources Director for Lochmead Farms and Lochmead Dairy. Pl.'s Ex. 15, p. 1 (Rust Dep., p.4).

conduct element requires "some form of moral culpability on the part of the parent corporation [] before the parent will be held liable for a debt of its subsidiary." Amfac, 294 Or. at 108 (quoting E.A. Schlecht et al. v. Equitable Builders, Inc., 272 Or. 92, 97-98, 535 P.2d 86 (1975)).

Generally, alter ego liability applies to shareholders, and plaintiff has failed to show that either Lochmead Farms or Lochmead Dairy has an ownership interest in Dari-Mart. It is not enough to merely claim that the three corporations share employees and business practices - some evidence of an ownership interest is required for liability to attach. Further, even if Oregon law extends alter ego liability to affiliated companies, plaintiff has also failed to show the existence of moral culpability on the part of Lochmead Farms and Lochmead Dairy. See Neidig, 343 Or. at 454 ("[The Oregon Supreme Court's] cases make it clear that veil piercing also may apply to claims against affiliated corporations.") Plaintiff offers no evidence that Lochmead Farms and Lochmead Dairy exercised control over Dari-Mart to engage in improper conduct that caused the alleged discrimination against her. In fact, plaintiff makes no allegation that defendants' abuse of the corporate form led to her alleged harm or renders her unable to obtain a remedy from Dari-Mart. Again, the fact that the three corporations happen to share employees or common business practices is insufficient to

pierce the corporate veil. Plaintiff has therefore failed to meet her burden on summary judgment and Lochmead Farms' and Lochmead Dairy's motion for summary judgment is granted.

CONCLUSION

For these reasons, plaintiff's Motion for Relief for Spoliation of Evidence (doc. 11) is DENIED and defendants' Motion for Summary Judgment (doc. 12) is GRANTED.

IT IS SO ORDERED.

Dated this 13 day of October, 2011.

Ann Aiken

Ann Aiken
United States District Judge